UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-22536-CIV-COHN/SELTZER

UNITED STATES for the use of BAC FUNDING
CONSORTIUM, INC., a Florida non-profit
corporation,

       Plaintiff,

v.

WESTCHESTER FIRE INSURANCE
COMPANY, a Pennsylvania corporation, ACE
AMERICAN INSURANCE COMPANY, a
Pennsylvania corporation, LENO DREDGING &
HAULING, INC., a Florida corporation, JAMES
A. LENO, an individual, CALVIN LENO, an
individual, LINELL LENO, an individual, and
CAROLYN LENO, an individual,

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO STRIKE AFFIRMATIVE DEFENSES AND
GRANTING MOTION TO DISMISS COUNTERCLAIM**

      **THIS CAUSE** is before the Court upon BAC's Motion to Strike ACE's Affirmative

Defenses [DE 44] ("Motion to Strike") and BAC's Motion to Dismiss ACE's Declaratory

Action [DE 45] ("Motion to Dismiss Counterclaim").  The Court has considered the

Motions and the submissions of the parties in connection therewith, and is otherwise

advised in the premises.

**I.   BACKGROUND**

      This action arises from disagreements relating to a public works project seeking

to restore natural water flow within Florida's Everglades ecosystem.  In May 2012,

Defendant Leno Dredging & Hauling, Inc. ("Leno Dredging") entered into a construction

contract with the United States Army Corps of Engineers (the "Owner") relating to the installation of a water conveyance structure in Miami-Dade County (the "Project").  DE 1 ¶ 12.  WFIC is a surety company that provided the Miller Act Payment Bond ("Payment Bond") and Performance Bond ("Performance Bond") for Leno Dredging's work on the Project.  Id. ¶ 34.  In the event that Leno Dredging did not promptly pay its subcontractors and suppliers, the Payment Bond obligated WFIC to make those payments.  Id. ¶ 35.  In the event that Leno Dredging was unable to complete the Project, the Performance Bond obligated WFIC to complete it.  Id. ¶ 23.  ACE, an affiliate of WFIC, entered into a series of agreements with Leno Dredging in connection with the Bonds, under which ACE would receive payments from the Owner as work on the Project progressed, and disburse them to Leno Dredging's subcontractors and suppliers.  DE 45 at 2.

When the time came for Leno Dredging to begin work on the Project, it lacked capital to do so.  DE 1 ¶ 23.  Leno Dredging thus sought financing from Plaintiff BAC Funding Consortium, Inc. ("BAC").  Id. ¶ 18.  BAC contacted ACE regarding Leno Dredging's request for funding.  Id.  ACE realized that WFIC's Performance Bond obligations would be triggered if Leno Dredging could not begin work on the Project.  Id. ¶ 23.  Therefore, ACE allegedly assured BAC that, if BAC provided funding so that Leno Dredging could commence work, ACE would ensure that funds it received from the Owner would be used to reimburse BAC.  Id. ¶¶ 18–20, 24.  Upon ACE's assurances, BAC agreed to finance Leno Dredging, and began disbursing funds to Leno Dredging's subcontractors and suppliers.  Id. ¶¶ 24–27.  At first, ACE transferred to BAC the payments it received from the Owner, in accordance with its alleged promise to BAC.

Id. ¶¶ 25–27.  In April 2013, however, ACE began to refuse requests to reimburse BAC. Id. ¶¶ 28–29.

BAC commenced this action on July 16, 2013, seeking to recoup the amounts it paid to Leno Dredging's subcontractors and suppliers and for which it has not been reimbursed.  See generally DE 1.  BAC raises numerous claims against WFIC, ACE, and Leno Dredging.  Against ACE, BAC asserts causes of action for promissory estoppel, unjust enrichment, and tortious interference with contract.  Id. ¶¶ 39–51.  ACE responded to BAC's claims on September 6, 2013, with an answer, affirmative defenses, and a counterclaim.  See generally DE 19.  ACE premises its affirmative defenses on the unreasonableness of BAC's alleged reliance upon ACE's promises, a lack of a benefit conferred upon ACE that could support an unjust enrichment claim, the privilege of justification in relation to the tortious interference claim, and ACE's superior rights to the funds at issue.  Id. at 6–7.  ACE also asserts one counterclaim seeking a declaratory judgment as to the superiority of ACE's entitlement to Project-related funds from the Owner.  Id. at 11–12.  BAC now moves to strike ACE's affirmative defenses and dismiss its counterclaim.

## II.  MOTION TO STRIKE

### A.  Legal Standard

Rule 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  However, "'[a] motion to strike is a drastic remedy,' which is disfavored by the courts."  Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962)).  Accordingly, motions to strike are usually "denied unless

the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Id. (internal quotation marks omitted); see also In re Se. Banking Corp. Sec. & Loan Loss Reserves Litig., 147 F. Supp. 2d. 1348, 1355 (S.D. Fla. 2001).

An affirmative defense is one that admits to the allegations of the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters. Royal Palm Sav. Ass'n v. Pine Trace Corp., 716 F. Supp. 1416, 1420 (M.D. Fla. 1989). A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense. Flav-O-Rich, Inc. v. Rawson Food Serv., Inc. (In re Rawson Food Serv., Inc.), 846 F.2d 1343, 1349 (11th Cir. 1988). An affirmative defense will only be stricken if it is insufficient as a matter of law. See Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F. Supp. 992, 1000 (M.D. Fla. 1976). "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." Id. (citations omitted). In evaluating the sufficiency of an affirmative defense, the Court should not consider matters beyond the pleadings. Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, No. 09-61490, 2010 U.S. Dist. LEXIS 138384, at *5 (S.D. Fla. Dec. 21, 2010).

Affirmative defenses are also subject to the general pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(b)(1)(A) requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A). Although Rule 8 does not obligate a defendant to set forth detailed factual allegations, a defendant must give the plaintiff "fair notice" of the nature of the defense and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). An affirmative defense must be stricken when the defense comprises no more

than bare-bones, conclusory allegations.  Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 684 (M.D. Fla. 2002).

### B. Discussion

#### 1. First Affirmative Defense

ACE raises its First Affirmative Defense in opposition to Count II of the Complaint, which asserts a cause of action for promissory estoppel.  In Count II, BAC alleges that ACE promised it would honor Leno Dredging's instructions to reimburse BAC, causing BAC to change its position in reliance upon ACE's promise and to pay Leno Dredging's subcontractors and suppliers.  DE 1 ¶ 40.  BAC alleges that ACE is therefore estopped from refusing to reimburse it for those payments.  Id. ¶ 41.

ACE's First Affirmative Defense to the promissory estoppel claim reads as follows:

> Count II alleges certain promises allegedly made by ACE at a time prior to WFIC receiving claims against its Payment and Performance Bonds or incurring losses under its Bonds. Count I [sic] does not allege any promises allegedly made by ACE after such claims arose and after ACE incurred losses. Upon such losses, BAC had actual or constructive knowledge that ACE had the contractual right to hold all project funds until such time as WFIC was discharged of liability under its Bonds. In addition, upon making payments under its Bonds, WFIC became equitably subrogated to all funds in the hands of the owner, up to the extent of WFIC's losses under its Bonds. A surety's equitable subrogation rights to project funds are deemed as a matter of law to be known to construction lenders. Thus, Count II fails to state a claim for promissory estoppel.

DE 19 at 6.  The main thrust of this defense—though not explicitly stated—appears to be that any reliance by BAC upon ACE's promise to pay would not have been reasonable.  The defense, however, combines a handful of distinct legal contentions; the Court will address each in turn.

ACE first apparently suggests that, because Leno Dredging defaulted on its payment obligations, triggering claims to WFIC under the Payment Bond, the circumstances changed such that BAC's reliance on ACE's promise of reimbursement was no longer reasonable.  The Complaint, however, seemingly alleges—and ACE does not controvert—that the payments made by BAC in reliance upon ACE's promises occurred prior to any default by Leno Dredging.  See DE 1 ¶¶ 12–27; DE 19 at 10.  The Court fails to see how Leno Dredging's subsequent defaults would impact the reasonableness of BAC's reliance upon ACE's alleged promise of reimbursement at the relevant time: when BAC made payments to the subcontractors and suppliers.  See Monetti, S.p.A. v. Anchor Hocking Corp., No. 87-9594, 1992 WL 109106, at *3–4 (N.D. Ill. May 12, 1992) (assessing reasonableness with reference to time of reliance).

ACE next contends that BAC had actual or constructive knowledge of ACE's "contractual right to hold all project funds until such time as WFIC was discharged of liability under its Bonds."  DE 19 at 6.  Presumably ACE means to plead that BAC's knowledge of ACE's contractual right to hold project funds rendered BAC's reliance on a promise of reimbursement unreasonable.  ACE's conclusory allegation of relevant contractual rights, however, fails to satisfy the pleading requirements of Rule 8.  ACE does not identify the source of its purported contractual rights to retain project funds or suggest how those rights would impact the reasonableness of relying upon ACE's alleged promise of reimbursement. Though ACE provides further factual detail in its opposition to the Motion to Strike (see DE 71 at 5), the Court will not consider matters beyond the pleadings in determining the sufficiency of an affirmative defense.  See Pandora Jewelers 1995, Inc., 2010 U.S. Dist. LEXIS 138384, at *5.  This portion of the

First Affirmative Defense therefore fails to provide sufficient notice of the factual and legal bases of the defense to allow BAC to respond appropriately.  See Mid-Continent Continent Cas. Co. v. Active Drywall S., Inc., 765 F. Supp. 2d 1360, 1361–62 (S.D. Fla. 2011) (striking defense premised upon contractual rights where defendant failed to identify contractual provision supporting its legal theory); Resurgence Props., Inc. v. W.E. O'Neil Constr. Co., No. 92-6618, 1995 U.S. Dist. LEXIS 10032, at *5–6 (N.D. Ill. July 18, 1995) (same).

ACE concludes by asserting that BAC's promissory estoppel claim fails because WFIC would become equitably subrogated to funds in the hands of the Owner up to the extent of its losses under its Payment and Performance Bonds.  DE 19 at 6.  ACE's defense does not explain how WFIC's theoretical priority to funds in the hands of the Owner would relieve ACE of liability for a promise to reimburse BAC with funds in ACE's own hands per the instructions of Leno Dredging.  The Court agrees with BAC that this assertion, as pled, is something of a non sequitur.

In sum, ACE's First Affirmative Defense is an amalgam of multiple legal assertions which are either unclear in their reasoning or are overly conclusory.  The defense as pled therefore fails to give BAC reasonable notice of the grounds for the defense, and the Court will accordingly strike the defense for failure to satisfy the requirements of Rule 8.  Nevertheless, ACE may re-plead this defense if it can do so in a manner that "state[s] in short and plain terms" the grounds for the defense.  See Fed. R. Civ. P. 8(b)(1)(A).  To the extent the First Affirmative Defense incorporates multiple distinct legal theories, the Court encourages ACE to plead each theory as a separate defense so as to avoid uncertainty regarding the precise legal basis for each defense.

### 2. **Second Affirmative Defense**

ACE's Second Affirmative Defense addresses Count III of the Complaint, for unjust enrichment.  With this defense, ACE contends that BAC fails to state a claim for unjust enrichment because BAC cannot establish that it conferred a benefit upon ACE. DE 19 at 6–7.  The conferral of a benefit by the plaintiff upon the defendant, however, is an element of a claim for unjust enrichment.  Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (per curiam). This defense is therefore not a true affirmative defense that admits to the Complaint's allegations but suggests some alternate grounds of avoiding liability; instead, it is a specific denial of an element of BAC's unjust enrichment claim.  See Royal Palm Sav. Ass'n, 716 F. Supp. at 1420.  Notwithstanding BAC's disagreement with the merits of the Second Affirmative Defense, it contains sufficient factual detail to provide BAC with notice of the grounds for the denial.  The Court thus will treat the defense as the denial that it is, and will allow it to stand on that basis.  See 5 Charles Alan Wright et al., Federal Practice and Procedure § 1269 (3d ed. Westlaw 2013) (suggesting that denials masquerading as defenses be allowed to stand as such, provided they contain sufficient factual detail to give plain notice of grounds for denial); Home Mgmt. Solutions, Inc. v. Prescient, Inc., No. 07-20608, 2007 U.S. Dist. LEXIS 61608, at *7–8 (S.D. Fla. Aug. 21, 2007).

### 3. **Third Affirmative Defense**

ACE's Third Affirmative Defense corresponds to Count IV of the Complaint, for tortious interference with a contractual relationship.  This defense asserts that ACE acted in its own economic interests as permitted under its contracts, thus its actions were privileged and cannot form the basis of a tortious interference claim.  DE 19 at 7.

The privilege of justification is an affirmative defense to a tortious interference claim under Florida law, premised upon the idea that a party cannot be liable on such a claim for acting in its own economic interests in accordance with the rights and responsibilities set forth in its contracts.  Special Purpose Accounts Receivable Coop. Corp. v. Prime One Capital Co., 125 F. Supp. 2d 1093, 1104 (S.D. Fla. 2000); see also Ethyl Corp. v. Balter, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980) (noting that in tortious interference cases, "activities take to safeguard or promote one's own financial[] and contractual interests are entirely non-actionable").  BAC takes issue with the merits of the defense, arguing that the terms of the contracts at issue did not justify ACE's actions.  DE 44 at 11–12.  ACE disagrees with BAC's interpretation of the contracts.  DE 71 at 11–13. Though BAC may ultimately overcome the Third Affirmative Defense, the Court finds that ACE's contentions therein are not patently frivolous or so clearly invalid that they should be stricken.  See Anchor Hocking Corp., 419 F. Supp. at 1000.  Moreover, the Court finds that the Third Affirmative Defense, which specifies the contractual provisions supporting ACE's alleged privilege, is sufficiently detailed as to provide BAC with notice of the basis for the defense asserted.  See DE 19 at 7.  The Court therefore will allow the Third Affirmative Defense to stand.

### 4.  Fourth Affirmative Defense

ACE raises the Fourth Affirmative Defense as to all counts.  The defense reads in its entirety: "ACE has contractual and equitable priority to all project funds until such time as WFIC's liability under its Bonds is discharged."  DE 19 at 7.  This defense fails as conclusory, because it does not identify the basis for ACE's purported contractual or other priority, stating insufficient facts to allow BAC to effectively respond.  See Mid-Continent Continent Cas. Co., 765 F. Supp. 2d at 1361–62.  Though ACE provides greater factual

detail in its opposition papers (see DE 71 at 14), as noted previously, the Court will not go beyond the pleadings in determining the sufficiency of the defense. See <u>Pandora Jewelers 1995, Inc.</u>, 2010 U.S. Dist. LEXIS 138384, at *5. The Court therefore will strike the Fourth Affirmative Defense for failure to satisfy the general pleading requirements of Rule 8, with leave to re-plead.

## III.   MOTION TO DISMISS COUNTERCLAIM

### A.   <u>Legal Standard</u>

ACE's counterclaim seeks declaratory relief. In addressing claims for declaratory judgment, "a court maintains broad discretion over whether or not to exercise jurisdiction over [such] claims." <u>Knights Armament Co. v. Optical Sys. Tech., Inc.</u>, 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008) (citing <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118 (2007)). This discretion extends to cases where the declaratory count is redundant because "a direct action involving the same parties and the same issues has already been filed." <u>Id.</u> at 1374–75. "When deciding whether to dismiss a counterclaim on the basis that it is redundant, courts consider whether a declaratory judgment serves a useful purpose." <u>Medmarc Cas. Ins. Co. v. Pineiro & Byrd, PLLC</u>, 783 F. Supp. 2d 1214, 1217 (S.D. Fla. 2011) (internal quotation marks omitted). In determining the usefulness of a claim, courts may consider "whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim." <u>Id.</u> at 1217 (internal quotation marks omitted).

### B.   <u>Discussion</u>

BAC argues that ACE's counterclaim should be dismissed for numerous reasons, including that it is subsumed within the other claims and defenses in this case. The counterclaim seeks a declaration that ACE has rights to project funds received from the

Owner superior to any right BAC might have in the funds.  DE 19 at 11–12.  This, of course, is the precise contention ACE advances in its Fourth Affirmative Defense. DE 19 at 7.  Because the resolution of BAC's claims and ACE's defenses thereto would resolve the questions raised in ACE's counterclaim, the Court finds that the counterclaim for declaratory judgment serves no useful purpose.  See Medmarc Cas. Ins. Co., 783 F. Supp. 2d at 1217.  Accordingly, the Court will exercise its discretion to dismiss ACE's counterclaim.  See It's a 10, Inc. v. Beauty Elite Group, Inc., No. 13-60154, 2013 U.S. Dist. LEXIS 121773, at *12–14 (S.D. Fla. Aug. 27, 2013) (declining to exercise jurisdiction over declaratory judgment counterclaim also pled as affirmative defense); Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co., No. 11-21163, 2012 U.S. Dist. LEXIS 57041, at *6–8 & n.2 (S.D. Fla. Apr. 24, 2012) (same); accord Knights Armament Co., 568 F. Supp. 2d at 1374–75 (dismissing declaratory judgment claim where claims brought by both sides to controversy would resolve issue at stake in declaratory judgment claim).

The Court acknowledges that its dismissal of the counterclaim as duplicative of the Fourth Affirmative Defense may appear odd in light of its decision to also strike that defense.  Nevertheless, the Court has struck the Fourth Affirmative Defense based upon a lack of factual detail, with leave to re-plead.  ACE would do well to take advantage of the Court's invitation to reassert its priority argument in the context of a defense to BAC's claims against it, as opposed to as a counterclaim for declaratory judgment.  A party seeking a declaratory judgment must satisfy the case or controversy requirement of Article III of the United States Constitution.  Odyssey Marine Exploration, Inc. v. Unidentified, 512 F. App'x 890, 895 (11th Cir. 2013) (per curiam).  This requires a

showing of the need for "equitable relief that is prospective in nature, with the aim to prevent future injuries." Kinslow v. Fla. Dep't of Corr., No. 10-440, 2011 U.S. Dist. LEXIS 24740, at *1 (N.D. Fla. Mar. 11, 2011) (citing Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997)).  The future injuries underlying a declaratory judgment claim must be "immediate or imminent" in character.  Odyssey Marine Exploration, Inc. v. Unidentified, No. 06-1685, 2012 U.S. Dist. LEXIS 115038, at *14 (M.D. Fla. Aug. 15, 2012), aff'd, 512 F. App'x 890 (11th Cir. 2013) (per curiam).  To the extent that ACE's counterclaim seeks a declaration reaching beyond the claims in this action and going to the parties' priority in future payments not yet disbursed by the Owner, in light of WFIC's potential subrogation rights based upon claims under the Bonds that WFIC may or may not have satisfied at that time (see DE 19 at 11–12), the counterclaim addresses only a threat of hypothetical injury.  An adjudication of the parties' rights upon such a "piling-on of contingencies" would constitute an impermissible advisory opinion.  See Odyssey Marine Exploration, Inc., 512 F. App'x at 895–96.

## IV.  CONCLUSION

In accordance with the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

(1)  BAC's Motion to Strike ACE's Affirmative Defenses [DE 44] is **GRANTED in part** and **DENIED in part**.  The Court hereby strikes ACE's First Affirmative Defense and Fourth Affirmative Defense, with leave to re-plead as to both defenses.

(2)  BAC's Motion to Dismiss ACE's Declaratory Action [DE 45] is **GRANTED**.  ACE's counterclaim for declaratory relief is **DISMISSED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 16th day of January, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF